SAMUEL CALVERT and others *v.* NICHOLAS PEEBLES and others.

When a stranger administers on the estate of one of several wards owning a common fund, he can and ought to make an actual division of the fund with the guardian of the surviving wards, and file in Court an inventory and descriptive list of the bonds, notes and other items comprising the estate.

If the guardian makes himself administrator of one of his wards, he must also sever the tenancy in common, and file of record an inventory and descriptive list of the separate share of his intestate, (ward.)

(*Graham's Adm'r.* v. *Davidson,* 2 Dev, & Bat. Eq. 115; *Wood* v. *Barringer,* 1 Dev. Eq. 67; *Speight* v. *Gatling,* 2 Dev. Eq. 5, cited and approved.)

This was a CIVIL ACTION by one set of sureties against another set for a fund in the hands of the sheriff, tried at the Fall Term, 1873, of NORTHAMPTON Superior Court before his Honor, *Judge Albertson.*

His Honor, upon the hearing of the case in the Court below, being of opinion with the defendants, gave judgment dismissing the action. From this judgment plaintiffs appealed.

All the facts pertinent to the questions raised and decided are set out fully in the opinion of the Court.

*Smith & Strong*, for appellants.
*Barnes*, contra.

BYNUM, J.  Prior to 1859, the defendant, Nicholas Peebles, became the guardian of four wards, brothers and sisters, who owned a fund in common, consisting of notes and bonds, and the plaintiffs became sureties on his guardian bond.

Edward Peebles, one of the wards, died in January, 1859, and in March following the said guardian became his administrator.

The distributees of Edward are his surviving brothers and sisters, the wards aforesaid, and the wife, and Ella, infant daughter of the said Nicholas, who himself separated the share of his intestate from the common fund, and held the same as the sole property of the intestate.

In distributing the estate of Edward among the next of kin, he again separated in certain bonds, the share of Ella, for whom he afterwards became the guardian, to wit, at December Term, 1861, and gave bond with the defendants, Boone, Stephenson and Capehart, as his sureties, and he assigned to her the bond in controversy.  At December Term, 1850, Nicholas, the administrator, filed a petition for the settlement of the estate of Edward and at March Court, 1860, made a final settlement of the estate, prior to which time he had lent Ella's share to the county of Northampton.

In making these several divisions of the common fund, the said Nicholas acted alone and represented himself, all the interests involved, and at the time he appropriated this fund to Ella, he also made a like appropriation to his other wards, in other funds, to the full amount of their shares in Edward's estate.

The plaintiffs are the sureties on the guardian bond of the original wards, and the defendants are the sureties on the guardian bond of Ella, and both sets of sureties have paid large sums as sureties on their respective bonds, owing to the default of the guardian who had become and is now insolvent.  Nich--

olas Peebles has recovered judgment for $1000, balance due on the bond lent as aforesaid, which sum is in the hands of the sheriff, and is claimed by the said Nicholas, as the property of his ward, Ella.

The plaintiffs claim that the said sum is still a part of the common fund of the original wards, undivided, and that their shares, to wit, three-fifths thereof, should be applied in their exoneration as the sureties on said guardian bond. The defendant, Nicholas, claims that the sum is the separate estate of his ward Ella, by virtue of the facts hereinbefore stated, and that she is entitled to the whole sum.

His Honor below, being of opinion that the fund was the sole property of Ella, dismissed the action, and the plaintiffs appealed to the Supreme Court.

If upon the death of Edward his administrator did not make an actual severance of his part from the common fund so as to constitute it the separate estate of the intestate, *in specie*, the tenancy in common still subsists, and the plaintiffs are entitled to recover.

If it was then so divided as to become the separate estate of the intestate in the hands of the administrator, yet, unless upon the final settlement of Edwards' estate, he divided that and set apart the share of Ella, with the same unequivocal acts of severance and appropriation, the fund would still be common, although new tenants had been let in, and the plaintiffs would be entitled to recover.

Where a stranger administers upon the estate of one of several wards owning a common fund, he can and ought to make an actual division of the fund, with the guardian of the surviving wards and file in Court an inventory and descriptive list of the bonds, notes and other items comprising the estate. In such case, the division would be valid, because the administrator is dealing at arms length with a party, competent and having power to act. If a guardian makes himself the administrator of one of his wards, he cannot, by assuming this double character, evade the duty of severing the tenancy in common,

by other methods equally distinctive and unequivocal. In this case, if he as administrator, had filed of record an inventory and descriptive list of the separate share of his intestate, if, as guardian of Ella, he had returned of record her separate estate and of what it consisted ; if on the final settlement of the estate of Edward, made with the Court in 1860, as he alleges, he had filed a circumstantial account of the character and articles of the estate, remaining in his hands for distribution, as our laws respectively require, then cotemporaneous acts would have shown that he attempted at least to make these several divisions of the common fund which he claims to have made. Rev. Code, chap. 46, secs. 24 and 25, and chap. 24, secs. 11 and 12.

From the time Nicholas Peebles came into possession of this common fund of his wards, in 1856, he never loses the dominion over the whole or any part of it. First as guardian, then as administrator and finally as guardian of Ella, he steadily follows and retains the exclusive control of the entire fund. As administrator, he could not deal and settle with the guardian, and as guardian, he could not settle with the administrator, because he had voluntarily assumed both characters, and he failed to invoke the aid and sanction of the Court in dividing the common fund in severalty. From his appointment as guardian in 1856, as administrator in 1859, and as guardian again in 1861, it does not appear that any act was done or record made cotemporaneous with and indicating these alleged divisions, though in each case required by law.

The only evidence supporting the answer is that of W. W. Peebles, who states that about two years before the action against the county for the fund now in dispute was begun, he was employed by Nicholas Peebles to bring the action, who then claimed this fund as the separate estate of Ella. This was several years after the war and after all the common fund, except this, had been lost or wasted, when it was his manifest interest, to set up the claim in behalf of his daughter.

If this proof establishes any thing it is that no claim for Ella, in this fund, was asserted by act or word, prior to that time.

This course of dealing with the common fund is referred to, not to contradict, but to interpret and put a proper construction upon the case agreed, which is but a meagre statement of conclusions rather than facts.

This action is to be considered as if brought by the wards against their guardian, for an account and the payment of their shares, alleging that this sum in dispute, is a part of the common fund, and that this alleged partition and assignment to Ella, never took place. If when so called on, he in answer, contents himself with a simple affirmation of the division and a general denial of the allegations, leaving his wards to make full proof if they can, he violates the plainest principles of equity. For there is no trust which can be reposed in one person over the property of another, in regard to the management of which a full and detailed account is more imperiously demanded, than in that which the law confides to a guardian, over the estate of the ward. *Graham, Adm'r,* v. *Davidson,* 2. D. & B. Eq., 155. An *ex parte* settlement by an administrator with the County Court, is not binding on the next of kin. *Wood* v. *Barringer,* 1 Dev. Eq., 67, and that even if honestly made. *Speight* v. *Gatling,* 2 Dev. Eq., 5.

Where negroes were specifically bequeathed to two, and the share of one was set apart, and a profit was made by the executor, on the other share reserved for an infant, this was held to be no severance of the tenancy in common, until the infant should arrive at age and comfirm it, and that in the mean time, the profit might be recovered in a joint bill by the two legatees. *Wood* v. *Barringer,* 1 Dev. Eq., 67.

So here we hold that the facts agreed do not constitute a severance of the tenancy in common of the original fund owned by the intestate Edward in common with his brothers and sisters, nor of Ella's tenancy in common in the intestate, Edward's share of the original fund.

The plaintiffs are therefore entitled to the relief they ask.

Judgment reversed. Let a decree be drawn in conformity with this opinion, and reference to the Clerk.

PER CURIAM.                                    Judgment reversed.